TIMOTHY EARL WALLEN, Plaintiff v. RIVERSIDE SPORTS CENTER, a General Partnership, JOHN M. ROSE, JR. and SOL C. ROSE, Defendants

No. COA03-1679

(Filed 20 September 2005)

**Premises Liability— natural hazard on real property—liability of owner—constructive notice—foreseeability—issues of fact**

Defendants had a duty on these facts to exercise reasonable care regarding natural conditions on their lands lying adjacent to a public highway (a navigable river), provided that they had

notice of a dangerous condition. The trial court erred by granting summary judgment for defendants on a negligence claim for injuries suffered when a decayed tree fell on plaintiff while his boat was tied to a pylon at defendants' boat ramp. The urban-rural distinction in older cases is no longer clear.

Appeal by plaintiff from judgment entered 9 October 2003 by Judge Steve A. Balog in Cumberland County Superior Court. Heard in the Court of Appeals 2 September 2004.

*Twiggs, Beskind, Strickland & Rabenau, P.A., by Jerome P. Trehy, Jr., for plaintiff-appellant.*

*Horton and Gsteiger, P.L.L.C., by Urs R. Gsteiger, for defendant-appellants.*

STEELMAN, Judge.

Plaintiff, Timothy Earl Wallen, appeals the superior court's order granting defendants' motion for summary judgment and dismissing plaintiff's action with prejudice. For the reasons discussed herein, we reverse.

Since 1977, brothers John and Sol Rose have operated Riverside Sports Center. Defendants lease twenty-five acres of largely undeveloped land fronting the Cape Fear River off of Person Street in Fayetteville, North Carolina. On a portion of the leased property, defendants operate a small bait and tackle shop and a Quonset hut for boat repairs. Incident to this business, defendant's obtained a permit from the Army Corps of Engineers to construct a boat ramp, providing access to the Cape Fear River. As part of the construction of the boat ramp, defendants also installed wooden "pylons" in the river. These pylons, also called "fender piles," were placed both upstream and downstream from the boat ramp to prevent logs floating downstream from harming the boat dock or ramp. Defendants' customers frequently tied their boats to the pylons while waiting to use the ramp to remove their boats from the river.

On 31 August 2001, plaintiff met Rick George and his son at Riverside to go fishing. At approximately 4:00 p.m., George paid the access fee and launched his pontoon boat into the river using Riverside's ramp. After the party had fished for a while, the wind picked up and dark clouds rolled in. They decided to get off of the river until the storm passed. By the time plaintiff and George got back to the Riverside boating facility, it was raining and there were four

boats ahead of them waiting to use the ramp to get off the river. George tied his boat to one of the downstream pylons. Plaintiff and George began putting a tarp over the boat to keep it dry. George said he heard a loud noise, like an artillery round, and felt something hit the boat. When he turned, he saw plaintiff lying on his back, unconscious. George was able to revive plaintiff using CPR. While waiting for an ambulance to arrive, he noticed a large log broken in half, lying on the bow of his boat. A Boxelder tree had fallen and struck plaintiff, leaving him with a horseshoe-shaped gash on the back of his head, extending from ear to ear. As a result of his injuries, plaintiff was rendered a paraplegic.

Plaintiff brought suit against defendants, alleging he was injured by defendants' negligence. Plaintiff asserted that defendants failed to exercise reasonable care to keep their premises in reasonably safe condition, and more specifically, that defendants failed to properly inspect their property and remove any dead trees around the pylons, and as a result of their negligence, plaintiff was injured. On 28 August 2003, defendants filed a motion for summary judgment, contending plaintiff: (a) failed to show defendants owed any duty to plaintiff; (b) failed to show defendants were negligent; and (c) failed to show that his injury was reasonably foreseeable to defendants. On 9 October 2003, the trial court granted defendants's motion for summary judgment. Plaintiff appeals.

### Summary Judgment

In plaintiff's only assignment of error, he contends the trial court erred in granting defendants' motion for summary judgment because there existed genuine issues of material fact. We agree.

We review the trial court's grant of summary judgment *de novo*. *Stafford v. County of Bladen*, 163 N.C. App. 149, 151, 592 S.E.2d 711, 713, *disc. review denied*, 358 N.C. 545, 599 S.E.2d 409 (2004). Summary judgment is proper when the pleadings, together with depositions, interrogatories, admissions on file, and supporting affidavits show that no genuine issue of material fact exists between the parties with respect to the controversy being litigated and the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2004). In considering such a motion, the court must view the evidence in the light most favorable to the non-movant. *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002). The party moving for summary judgment bears the burden of establishing the lack of any triable issue of fact.

*Id.* at 681, 565 S.E.2d at 146. This burden may be met " 'by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim . . . .' " *Id.* (citations omitted).

Summary judgment is seldom appropriate in a negligence action. *Bostic Packaging, Inc. v. City of Monroe,* 149 N.C. App. 825, 830, 562 S.E.2d 75, 79 (2002). A trial court should only grant such a motion where the plaintiff's forecast of evidence fails to support an essential element of the claim. *Id.* In order to establish a *prima facie* case of negligence against the defendant, a plaintiff must show: "(1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) plaintiff suffered damages as a result of the injury." *Vares v. Vares,* 154 N.C. App. 83, 87, 571 S.E.2d 612, 615 (2002), *disc. review denied,* 357 N.C. 67, 579 S.E.2d 576 (2003).

## Duty

Historically, the law pertaining to a landowner's responsibility for natural conditions occurring on his or her real property has been:

§ 363 Natural Conditions

(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

Restatement (Second) of Torts § 363 (1965). Many of the older cases dealing with this issue rigidly applied an urban-rural distinction to hold that a rural landowner had no duty under circumstances where a duty would exist for an urban landowner. This state and country have changed greatly since these principles were first enunciated. At that time, there existed stark differences between urban and rural settings. Today, these distinctions are not so clear. There are many areas that share both traditional urban and rural characteristics.

Defendants' property is an example of this. It has many urban characteristics: it is zoned industrial; it is located within the corporate limits of Fayetteville; it is located upon a major thoroughfare; and it adjoins a railroad track. It also has many rural characteristics: it adjoins the Cape Fear River; it is heavily wooded at the river; and its primary use is recreational.

Increasingly, the courts of various states have moved away from the rigid urban-rural analysis towards imposing a duty of reasonable care upon a landowner based on the attendant circumstances. *See e.g., Meyers v. Delaney,* 529 N.W.2d 288, 290 (Iowa 1995); *Ivancic v. Olmstead,* 488 N.E.2d 72, 73 (N.Y. 1985); *Sprecher v. Adamson Cos.,* 636 P.2d 1121, 1128-29 (Cal. 1981); *Miles v. Christensen,* 724 N.E.2d 643, 646 (Ind. App. 2000); *Willis v. Maloof,* 361 S.E.2d 512, 513 (Ga. App. 1987); *Burke v. Briggs,* 571 A.2d 296, 299-300 (N.J. Super. App. Div. 1990); *Dudley v. Meadowbrook, Inc.,* 166 A.2d 743, 744 (D.C. 1961).

In *Gibson v. Hunsberger,* this Court adopted this approach in a case involving a tree falling on a highway, in what was clearly a rural setting. 109 N.C. App. 671, 428 S.E.2d 489, *disc. review denied,* 334 N.C. 433, 433 S.E.2d 177 (1993). After reciting section 363 of the Restatement of Torts, this Court stated:

> We adopt the foregoing analysis and hold that a landowner has a duty to exercise reasonable care regarding natural conditions on his land which lies adjacent to a public highway in order to prevent harm to travelers using the highway. A landowner is subject to liability only if he had actual or constructive notice of a dangerous natural condition.

> To impose a liability upon defendant landowners, plaintiffs had to prove not only that the tree constituted a dangerous condition to the travelers of the adjacent public road, but that the landowners had actual or constructive notice of the dangerous condition.

*Id.* at 675, 428 S.E.2d at 492. This statement of the law is consistent with our Supreme Court's holding in *Nelson v. Freeland,* 349 N.C. 615, 507 S.E.2d 882 (1998). In *Nelson,* the Supreme Court abolished the trichotomy of trespasser-licensee-invitee for purposes of premises liability law and instead imposed the "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors" upon owners and occupiers of the land. *Id.* at 632, 507 S.E.2d at 892.

We hold that defendants in the instant case had a duty to exercise reasonable care with respect to natural conditions on their land, which was adjacent to a public highway. Provided, however, defendants are subject to liability *only* if they had actual or constructive notice of a dangerous natural condition existing upon their land.

### Cape Fear River Is a "Public Highway"

At the time plaintiff was injured he was on a "public highway," since "[n]avigable waters constitute a public highway." *Cromartie v. Stone*, 194 N.C. 663, 668, 140 S.E. 612, 615 (1927) (holding the Cape Fear River was a public highway). *State v. Glen*, 52 N.C. 321, 325 (1859) (holding all rivers with sufficient depth for floatage are "public highways by water").

### Constructive Notice

This case is devoid of any evidence that defendants had any actual notice of the decayed condition of the Boxelder tree. Thus, our analysis turns on whether plaintiff presented sufficient evidence that defendants had constructive notice of the tree's condition to withstand defendants' motion for summary judgment. Each party offered affidavits from expert arborists expressing opinions about the condition of the Boxelder tree.

In their brief, defendants argue it was within the trial court's discretion to ignore the proffered affidavit from plaintiff's expert since it was incompetent on the issue of causation. This is incorrect. The trial court's order clearly states that it denied the parties' cross-motions to strike the affidavits of the other's expert and that it considered both experts' affidavits. We further note that the affidavit of plaintiff's expert, Kenneth Knox, is directly contradicted by the affidavit of defendants' expert, David Lusk. It is not the trial court's role to resolve conflicts in the evidence presented on a motion for summary judgment. *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002). Rather, the trial court's duty is "strictly confined to determining whether genuine issues of material fact exist[.]" *Id.* In doing so, it must consider the evidence in the light most favorable to plaintiff, as the non-moving party. *Id.*

The evidence presented, taken in this light, tends to show the following: Riverside Sports Center has been in business since 1977. The premises includes a wooden dock located on the Cape Fear River, with a concrete boat ramp extending on both sides of the dock. Defendants placed pylons out into the river, both upstream and

downstream from the dock, to protect the dock and ramps from trees and other debris floating in the river. Defendants knew that their customers routinely tied their boats to the downstream pylons to prevent their boats from drifting downstream while they waited for the ramp to clear so they could remove their boats from the river. There were trees along the bank of the river, the limbs of which hung over the river in the area of the downstream pylons. Defendants admitted they had previously trimmed the trees on both sides of the ramp. The affidavit and report of plaintiff's expert, Kenneth Knox, who specializes in hazard tree analysis, stated that "the only tree in the area of the incident that could possibly have caused the damage to [George's] boat was an 18.5" diameter (dbh) Boxelder/Ashleaf Maple." Mr. Knox inspected the trees along the river bank at the downstream pylon on 16 September 2003. He stated the trunk of this tree snapped off approximately thirteen feet above the ground, approximately two years earlier, based on the ages of the epicormic branches that grew from the vicinity of the break. Further, a portion of the upper tree trunk had broken off six to ten years earlier, causing the tree bark to be stripped, and created a V-shaped wound on the tree, which accelerated the interior decay of the tree. The trunk of the Boxelder tree was leaning at a "very pronounced angle, from the top of the bank" out over the river in the direction of the fourth pylon, where the George boat was tied. Knox opined that the tree was approximately 40'-60' feet in length and was definitely capable of striking George's boat. Knox further stated:

[I] further believe that it was obvious that this Boxelder had been extensively decayed for many years prior to its breaking (on August 31, 2001), that it exhibited a number of conspicuous dead branches and external trunk decay, and that these obvious symptoms of decline and hazard-potential (dead branches and trunk decay), should have been observed with considerable concern by the owners of the property (particularly because of the strong lean of the tree towards the water), and that this tree should have been cut before it fell and harmed Mr. Wallen.

We hold that the evidence presented to the trial court, taken in the light most favorable to plaintiff, presented a genuine issue of material fact on the issue of constructive notice.

### Negligence

Defendants had a duty to exercise reasonable care regarding natural conditions on their lands lying adjacent to a public highway.

*Gibson*, 109 N.C. App. at 675, 428 S.E.2d at 492. In this case, the parties' use of the pylons to temporarily secure the boat was directly related to their use of defendants' boat ramp, for which they paid a fee. Defendants knew their pylons were regularly used by their customers to tie their boats while waiting to use the boat ramp. The Boxelder tree, which fell on the boat, had broken off once before the 31 August 2001 incident and exhibited signs of decay. This tree also hung out over the river and the pylon to which George had tied his boat.

As noted above, summary judgment is seldom appropriate in a negligence action. Further, taken in the light most favorable to plaintiff, the evidence presented to the trial court presented a genuine issue of material fact on the issue of defendants' negligence.

We caution that this holding is based upon the particular facts present in this case, and is not intended to place an absolute duty upon persons owning property located along a river or other public highway to inspect or trim trees adjoining that public highway.

## Foreseeability

The final basis of defendants' motion for summary judgment was foreseeability. In order for a defendant to be liable for a negligence claim, the injury must be reasonably foreseeable. *Winters v. Lee*, 115 N.C. App. 692, 694, 446 S.E.2d 123, 124 (1994). Thus, a plaintiff must show that " 'a man of ordinary prudence would have known that [plaintiff's injury] or some similar injurious result was *reasonably foreseeable . . . .*' " *Id.* (citations omitted). Given the facts as recited above in our discussion of duty, constructive notice, and negligence, we hold that the evidence taken in the light most favorable to plaintiff demonstrates there existed a genuine issue of material fact on the issue of foreseeability.

REVERSED AND REMANDED.

Judges CALABRIA and ELMORE concur.