TYSON DAVIS, BY AND THROUGH HIS GUARDIAN BETTY GHOLSTON AND BETTY GHOLSTON INDIVIDUALLY, PLAINTIFFS v. CUMBERLAND COUNTY BOARD OF EDUCATION, DEFENDANT

No. COA10-1559

(Filed 20 December 2011)

**Premises Liability—bleachers—gap between seat and floorboard**

> Summary judgment was properly granted for defendant school board in a premises liability action arising from injuries to a six-year-old who fell through the bleachers at a football game. Defendant introduced evidence that the bleachers were in compliance with the building code and that defendant had no notice of any prior problems with the bleachers, which shifted the burden to plaintiff. Plaintiff pointed to no evidence of what a reasonable school board would have done other than changes to the bleachers after the accident, which were not admissible.

Appeal by plaintiffs from order entered 30 June 2010 by Judge E. Lynn Johnson in Cumberland County Superior Court. Heard in the Court of Appeals 8 June 2011.

## DAVIS v. CUMBERLAND CNTY. BD. OF EDUC.

[217 N.C. App. 582 (2011)]

*Shanahan Law Group, PLLC, by Kieran J. Shanahan and Melissa L. Pulliam, for plaintiffs-appellants.*

*McAngus, Goudelock & Courie, PLLC, by Mary M. Webb and Webster G. Harrison, for defendant-appellee.*

GEER, Judge.

Plaintiff Betty Gholston, on her own behalf and as guardian for Tyson Davis, appeals from the trial court's order granting summary judgment to defendant, Cumberland County Board of Education ("the Board"), in this premises liability action. Tyson Davis, who was six years old at the time, was severely and tragically injured when he fell through bleachers located on the premises of the Board's Seventy-First High School. Because the Board presented evidence that it was not negligent—in that the bleachers complied with the North Carolina Building Code ("the Building Code") and it had no notice of any prior problems with the bleachers—and because plaintiff presented no admissible evidence that a reasonable and prudent school board would have done anything different with respect to the bleachers, we hold that the trial court properly granted the Board summary judgment.

### Facts

On 20 October 2006, Tyson Davis attended a football game with his father at Seventy-First High School in Fayetteville, North Carolina. Tyson sat with his father near the top of the school's aluminum bleachers. The bleachers were damp with condensation, and Tyson, while walking down them, slipped and fell through the 18-inch to 24-inch gap between the bleacher seat and the floorboard. Tyson fell approximately 10 feet and struck his head on the concrete, fracturing his skull. He underwent surgery to have permanent metal plates and screws inserted into his head.

Plaintiff filed suit against the Board on 7 October 2009, alleging that the Board breached its duty to ensure that the bleachers and its premises were reasonably safe for all invitees by failing to cover the openings between the seats of the bleachers or take any other measures to protect invitees from the danger presented by the openings. Plaintiff further alleged that the Board breached its duty to warn of the risk and danger associated with the bleachers.

Defendant filed an answer on 8 December 2009 generally denying plaintiff's claim and asserting the defenses of contributory negligence

and sovereign immunity. After conducting discovery, defendant filed a motion for summary judgment on 28 May 2010.

The Board presented an affidavit from an engineer attesting that the bleacher seatboards and floorboards met the Building Code requirements and standards at the time they were originally constructed and installed and when they were modified in 1985 to replace the wooden seatboards and footboards with aluminum seatboards and footboards. Further, at the time Tyson fell in 2006, "the bleachers were compliant with the appropriate North Carolina Building Code given the date(s) of installation and modification."

Additionally, Mickey Stoker, the school's athletic director in 2006, submitted an affidavit stating that he inspected the bleachers twice a year for safety and maintenance. According to Mr. Stoker, at the time of the accident, the bleachers were in a safe condition and did not require any repairs. Mr. Stoker had been the athletic director for six years and, during this period, there had never been any problems with the bleachers and he was unaware of anyone falling through the bleachers and injuring themselves prior to 20 October 2006.

In response to the motion for summary judgment, plaintiff submitted the affidavit of Tyrone Davis, Tyson's father. Mr. Davis described the bleachers, what occurred on 20 October 2006, how Tyson came to fall to the concrete under the bleachers, and the fact that a number of children of Tyson's age were present in the bleachers.

The trial court entered an order granting summary judgment for the Board on 30 June 2010. Plaintiff timely appealed to this Court.

I

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). This Court reviews the trial court's grant of summary judgment de novo. *Nationwide Mut. Fire Ins. Co. v. Mnatsakanov*, 191 N.C. App. 802, 805, 664 S.E.2d 13, 15 (2008).

Our Supreme Court has explained the burdens applicable to a motion for summary judgment:

The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact. This burden may be met by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim.

*DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (internal citations and quotation marks omitted).

Once the moving party meets its burden, "then the nonmovant must produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) (internal quotation marks omitted), *overruled in part on other grounds by Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998). In order to meet this burden, the nonmoving party " 'may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting N.C.R. Civ. P. 56(e)).

As our Supreme Court explained in *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002) (internal citation omitted), a premises liability case, "[a]ctionable negligence occurs when a defendant owing a duty fails to exercise the degree of care that a reasonable and prudent person would exercise under similar conditions, or where such a defendant of ordinary prudence would have foreseen that the plaintiff's injury was probable under the circumstances." Under this standard, a premises' owner " 'must use the care a reasonable man similarly situated would use to keep his premises in a condition safe for the foreseeable use by [a lawful visitor]—but the standard varies from one type of establishment to another because different types of businesses and different types of activities involve different risks to the [lawful visitor] and require different conditions and surroundings for their normal and proper conduct.' " *Id.* at 474, 562 S.E.2d at 893 (quoting *Hedrick v. Tigniere*, 267 N.C. 62, 67, 147 S.E.2d 550, 554 (1966)).

The question presented by this case is, therefore, whether the Board exercised the care that a reasonable school board would have exercised with respect to bleachers at an athletic field under similar circumstances. *See id.* at 475, 562 S.E.2d at 893-94 (holding that

"defendant landowner had a duty to exercise such reasonable care as a landowning proprietor, running a motion-picture studio while maintaining a significant degree of control over the daily operations of its licensees, would exercise under the circumstances").

In support of its motion for summary judgment, the Board presented evidence that its bleachers complied with the Building Code and that their athletic director was unaware of anyone having ever fallen through the bleachers or of any other problems with the bleachers. While plaintiff argues vigorously that "[w]hether a building or structure meets the standards of the North Carolina Building Code, N.C. Gen. Stat. § 143-138 et al., is not determinative of the issue of negligence[,]" this Court has held that evidence whether a structure conforms to the Building Code is "relevant and admissible." *Thomas v. Dixson*, 88 N.C. App. 337, 343, 363 S.E.2d 209, 213 (1988). Further, "[w]hether or not a building meets these standards, though not determinative of the issue of negligence, *has some probative value as to whether or not defendant failed to keep his [premises] in a reasonably safe condition.*" *Id.* (emphasis added).

Consequently, the fact that the bleachers complied with the Building Code was evidence that the Board kept the bleachers in a reasonably safe condition. *See also Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 68, 376 S.E.2d 425, 428 (1989) (explaining that " 'compliance with a statutory standard [such as the Building Code] is *evidence* of due care,' " although " 'it is not conclusive on the issue' " (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 30 (5th ed. 1984))).

Even though the Board's evidence of compliance with the Building Code does not conclusively establish due care, that evidence, when combined with the Board's evidence of a lack of notice of any prior problems with its bleachers, was sufficient to shift the burden on summary judgment to plaintiff. *See Roumillat*, 331 N.C. at 63-64, 414 S.E.2d at 342 ("Under N.C. R. Civ. P. 56(e), after defendant met its burden by showing that plaintiff could not come forward with a forecast of evidence that defendant knew or should have known of the presence of [the hazardous condition] and, having sufficient time to do so, negligently failed to remove it, the burden then was upon the plaintiff to make a contrary showing.").

For plaintiff to meet her burden, she was required to come forward with evidence suggesting that a reasonable school board would have acted differently with respect to bleachers for a high school

**DAVIS v. CUMBERLAND CNTY. BD. OF EDUC.**

[217 N.C. App. 582 (2011)]

athletic field. *See McLaurin v. East Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 600 (E.D.N.C. 2009) (holding that defendant's evidence on summary judgment that it met the industry standard was sufficient to shift burden to plaintiff to "come forward with evidence that suggests what a reasonable person would do in similar circumstances"), *aff'd sub nom. McLaurin v. Vulcan Threaded Prods., Inc.*, 410 F. App'x 630 (4th Cir. 2011). It is not sufficient for a plaintiff to "argue that if the defendant had only done something differently, the plaintiff's injuries would not [have] result[ed]. What matters . . . is not just whether something different could have been done; rather, what matters is whether a reasonable person in similar circumstances would have done something different." *Id.*

In this case, plaintiff has asserted that "[i]n failing to ensure that any gap in the bleachers was small enough to reasonably protect the safety of children of Appellant's age and size, Appellee failed to exercise the degree of care of a reasonable and prudent person." Although plaintiff cites to no evidence following that assertion, plaintiff then concludes: "As such, a genuine issue of material fact exists as to the safety of the bleachers and it was error for the Trial Court to grant Appellee's motion for summary judgment."

Plaintiff argues on appeal that the Board should either have warned of the gap in the bleachers or restricted the use of the bleachers based upon age or size. Alternatively, plaintiff contends that if a warning would not have sufficed, the Board "had a duty to take the appropriate precautions to ensure the protection of its lawful visitors. . . . which were to install varying riser plates to minimize the gap between the bleachers."

Although plaintiff includes no cite to the record regarding her contention that the Board was required to warn of the gap or restrict the use of its bleachers, she relies upon the Board's interrogatory answers in support of its contention that the Board was required to install riser plates to minimize the gap. Plaintiff's interrogatory had asked the Board to describe all actions "that were taken in response to the accident." The Board objected that this interrogatory called for evidence of a subsequent remedial measure contrary to Rule 407 of the Rules of Evidence, but nonetheless responded:

> Without waiving said objection, for the bleachers in question, a 6" x 1" riser plate was added to 14 rows and a 6" x 2" footboard to 14 rows and the riser plate ran continuously across the steps. 180' of 10" riser plate was added at the back and

additional railing behind the top was added for 42" compliance. Fencing and stiffeners for the front walkway were added and approximately 30 feet of footboard was replaced.

Plaintiff also cites to a table setting out the changes made by the Board to bleachers following the accident.

Plaintiff makes no attempt on appeal to address the admissibility of this evidence under Rule 407, which provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if those issues are controverted, or impeachment.

The Board's interrogatory answer falls squarely within Rule 407—plaintiff is relying upon the subsequent measures to prove the Board's negligence. *See Smith v. N.C. Dep't of Natural Res. & Cmty. Dev.*, 112 N.C. App. 739, 746, 436 S.E.2d 878, 883 (1993) (holding that evidence of signs, railings, and stairways constructed around waterfall after fatality were inadmissible under Rule 407). Since the evidence is inadmissible, it cannot support reversal of the summary judgment order.

Plaintiff points to no other evidence regarding what a reasonable school board would have done under the circumstances. In contrast to the plaintiff in *Collingwood*, plaintiff in this case presented no expert affidavits or other evidence regarding whether the Building Code provided inadequate protection or whether a reasonable owner in the Board's circumstances would have known that it needed to take further steps to make the bleachers safe. *Compare Collingwood*, 324 N.C. at 70, 376 S.E.2d at 429 (holding that defendant not entitled to summary judgment despite evidence that apartment complex complied with Building Code and industry standard because plaintiff presented affidavits from Chief of Fire Department and Inspector and statistical study that "would permit rational jurors applying the standard of a reasonable and prudent owner under the same or similar circumstances to reach differing conclusions as to whether defendant took appropriate fire safety precautions in the design and construction" of apartment complex).

In addition, plaintiff presented no evidence that other schools or boards of education in fact did anything differently than the Board here. *See Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 162, 516 S.E.2d 643, 646 (1999) (finding issue of fact precluding summary judgment when plaintiff presented evidence "that other stores in the area did not stack their merchandise as high as Defendant stacked its merchandise"). Further, plaintiff has made no attempt to counter the Board's evidence of no notice of any problem—she has pointed to no evidence of any similar occurrence with the Board's bleachers or with any other school's bleachers. *See Williams v. Walnut Creek Amphitheater P'ship*, 121 N.C. App. 649, 652, 468 S.E.2d 501, 503 (1996) (holding that prior incidents of injury to patrons are proper to consider in determining breach of duty).

The affidavit of Tyson's father, Tyrone Davis, is not sufficient to defeat summary judgment. The fact that Tyson slipped through a gap and was severely injured does not, without more, provide evidence of negligence. *See Roumillat*, 331 N.C. at 68, 414 S.E.2d at 345 (holding that "[n]egligence is not presumed from the mere fact of injury"); *Dawson v. Carolina Power & Light Co.*, 265 N.C. 691, 694-95, 144 S.E.2d 831, 834 (1965) (holding that "[n]o inference of actionable negligence on defendant's part arises from the mere fact" that plaintiff was injured when she slipped and fell due to water or mud inside defendant's office when plaintiff failed to present evidence that prudent storekeepers under similar conditions had mat at entrance of store or office on rainy days).

Because plaintiff presented only evidence of Tyson's fall and his injuries and did not present any admissible evidence that a reasonable school board would have, under the circumstances, done anything differently than the Board did, plaintiff failed to meet her burden in opposing the Board's motion for summary judgment. She did not present a forecast of evidence sufficient to establish a *prima facie* case of negligence against the Board. Accordingly, we affirm the order granting the Board summary judgment.

Affirmed.

Judges BRYANT and BEASLEY concur.