IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-560

No. COA21-230

Filed 19 October 2021

Mecklenburg County, No. 19 CVS 19930

MARY LEARY, by and through her Power of Attorney William Leary; WILLIAM LEARY, and ROBERT McCLINTON, Plaintiffs,

v.

RITA ANDERSON and GOKAM PROPERTIES LLC, Defendants.

Appeal by plaintiffs from order entered 7 October 2020 by Judge Carla N. Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 September 2021.

*Justice in Action Law Center, by Alesha S. Brown, for plaintiffs-appellants.*

*Offit Kurman, P.A., by Robert B. McNeill and Alexandra M. Edge, for defendant-appellee Gokam Properties LLC.*

TYSON, Judge.

¶ 1          Mary Leary, by and through her attorney-in-fact William Leary, with William Leary and Robert McClinton, individually (together, "Plaintiffs"), appeal from a superior court's order granting summary judgment in favor of Gokam Properties, LLC" ("Gokam Properties") regarding its acquisition of property from Rita Anderson ("Anderson") under a power of attorney, (together, "Defendants"). The superior court granted summary judgment and dismissed all claims against Gokam Properties and

dismissed Plaintiffs' *lis pendens*. Plaintiffs timely appealed.

## I. Background

### A. The Home

Mary Leary (Mrs. Leary) and Will Leary purchased property located at 1418 Russell Avenue, Charlotte, North Carolina ("the home") as tenants by the entirety in June 1963. Will Leary died in 2001, and Mrs. Leary acquired full title to the home by right to survivorship. Mrs. Leary continued to occupy the home as the sole owner until January 2017. Gokam Properties acquired the home on 20 September 2019 from Anderson under acting as Mrs. Leary's limited power of attorney to sell real estate.

### B. Rita Anderson's Purported Durable Power of Attorney

Mrs. Leary was 87 years old in January 2017 when this case arose. Rita Anderson moved her mother, Mrs. Leary, into her own home in January 2017. Mrs. Leary purportedly executed a durable power of attorney ("DPA") before a notary on 11 January 2017 for Anderson. The purported DPA appointed Anderson as Mrs. Leary's agent and empowered Anderson to act on behalf of her mother.

The purported DPA was not filed with the Mecklenburg County Register of Deeds until 21 October 2019, roughly one month after Mrs. Leary's home was conveyed to Gokam Properties on 20 September 2019 and 11 days after this lawsuit was filed.

### C. Mary Leary's Capacity

¶ 5        On 12 January 2017, Anderson accompanied Mrs. Leary, who presented for a doctor's visit with Michelle L. Foster, M.D.  The medical records specifically state, "her [Mrs. Leary's] daughter [Anderson] is seeking power of attorney and guardianship asthma (sic) some areas no longer able to make informed decisions," and "[t]oday I did advise her daughter that she cannot stand alone and I do suggest that she obtain power of attorney to handle all of her affairs."  Dr. Foster further wrote "I am asking that her daughter (Rita Leary Anderson) assume power of attorney for Ms. Leary."

¶ 6        Dr. Foster stated the following concerning Mrs. Leary's condition: (1) "past medical history significant for coronary artery disease, hypertension, hyperlipidemia, increase in memory loss and some mild dementia as well as worsening weakness and weight loss;" (2) "[s]he also has had worsening vision and increasing memory loss and worsening dementia;" (3) "[s]he still has limited judgment and insight secondary to her mild dementia;" (4) "Dementia: Appears to be worsening;" and (5) "Mary Leary is under my care for multiple medical problems including dementia, anemia, hypertension and increasing cognitive difficulty secondary to dementia."

¶ 7        William Leary recorded a general power of attorney ("POA") from Mrs. Leary giving him authority to conduct real property transactions, estate transactions and other responsibilities less than five months later on 7 May 2017.  William Leary avers

in his sworn affidavit he was granted a DPA at that time.

### D. Incompetency Hearing

¶ 8        A hearing was held in a special proceeding, *In the Matter of Mary Alice Wilson Leary* before the clerk of superior court in file number 18-SP-1559, to determine Mrs. Leary's competency and her ability to function on her own on 8 June 2018.  Mrs. Leary was 89 years old by the time of the hearing.

¶ 9        During the 8 June 2018 hearing, the guardian *ad litem* ("GAL"), Attorney Fatina Lorick, issued a report, which noted:

> I spoke with Respondent about her home, and the fact that her sons lived in the home. Respondent expressed a desire to allow them to remain in her home. She also emphasized th[at] she took pride in her home, and that she and her late husband worked hard to obtain and maintain her home.
>  . . . .
>
> Based upon my investigations, I believe that it is in (sic) [Mrs. Leary] has some competency but requires assistance. I have concerns regarding the validity of [Anderson's] Power of Attorney and whether or (sic) [Mrs. Leary] had an adequate level of competency when she executed the document.

¶ 10       At the June 2018 hearing, the court found Mrs. Leary was "incompetent to a limited extent" and could "understand[] conversation and communicate[] personal needs," "make and communicate decisions about residential options," "demonstrates willingness to vote and can acquire information accordingly," as well as had capacity to determine her social and religious involvement.  The court ordered Mrs. Leary had

"final say for her living arrangements." Mrs. Leary as declared incompetent to make legal decisions or to execute legal documents at that hearing, and "if M. Anderson [was]unable to be bonded and qualify within 90 days of this order, atty (sic) to be appointed GOE [Guardian of the Estate]." Anderson failed to qualify as Mrs. Leary's guardian.

### E. Selling the Home

¶ 11 Over a year later, Anderson signed Mrs. Leary's name on a Limited Power of Attorney to Sell Real Estate on 6 September 2019. Based upon this purported Limited Power of Attorney to Sell Real Estate Mrs. Leary's home was sold and deeded to Gokam Properties on 20 September 2019.

¶ 12 Anderson knew Plaintiffs were residing in their mother's home, but Anderson did not tell Plaintiffs of the sale until 23 September 2019. Anderson purportedly told an agent of Gokam Properties not to notify Plaintiffs of the sale until after it was completed. A representative of Gokam Properties met William Leary and Robert McClinton at the home and offered each of them $300.00 if they would move out in two days.

¶ 13 Anderson did not place the proceeds of sale into an account for the benefit of Mrs. Leary. Instead, she contacted her brother, Robert McClinton to divide the proceeds between them, offering him $20,000.00 and she would keep the remaining $75,000.00 in proceeds.

## F. Trial Court Proceedings

¶ 14        Plaintiffs filed this instant lawsuit on 10 October 2019 to challenge the conveyance of the home. Defendants subsequently answered.  On 9 December 2019, a hearing was held in 18-SP-1559 to modify Mrs. Leary's guardianship.  In the GAL Report issued again by Attorney Fatina Lorick, it is reported Mrs. Leary did not want to sell her home and wanted to know if Attorney Lorick could help her get her home back.

¶ 15        Attorney Lorick noted:

> I was able to speak with [Mrs. Leary] who is now at
> Mecklenburg County Rehabilitation Center ("Center").
> [Mrs. Leary] informed me that she was there at the Center
> because she has no other place to go due to her home being
> sold by [Anderson]. She also asked me if there were any
> way for me to try to get her house back. She let me know
> that she recently moved into the Center and that none of
> her family was aware that she was at the center.
>  . . . .
>
> Given [Anderson's] unwillingness to meet with me and
> provide information to me, I have concerns regarding her
> ability and fitness to remain guardian. It was only after I
> threatened to to (sic) use law enforcement that she disclosed
> to me [Mrs. Leary's] location. In my communication with
> other family members, [Anderson] did not inform the rest
> of the family she [had] placed [Mrs. Leary] in the Center.
> Pursuant to the Order of the Court, [Anderson] is not
> qualified to assume general guardianship.

¶ 16        In an order dated 9 December 2019 in *In the Matter of Mary Alice Wilson Leary,* 18-SP-1559,  the  court  found  "Ms.  Anderson  failed  to  qualify  as  General

Guardian/Guardian of Person (GOP) & failed to stop the sale of [Mrs. Leary's] property. Court shall appoint Guardian of Estate."

Anderson filed her purported 11 January 2017 DPA with the Mecklenburg County Register of Deeds on 21 October 2019. Gokam Properties contend summary judgment is proper because it purchased Mrs. Leary's home through the holder of a DPA. The trial court entered summary judgment for Gokam Properties. Plaintiffs appeal.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2019).

## III. Issues

Two issues are presented on appeal: (1) whether the trial court erroneously granted Gokam Properties' motion for summary judgment; and, (2) whether the trial court erroneously cancelled the filed *lis pendens*.

## IV. Standard of Review

This Court reviews a summary judgment order *de novo. Wallen v. Riverside Sports Ctr.,* 173 N.C. App. 408, 410, 618 S.E.2d 858, 860 (2005). Summary judgment is proper only when the "pleadings, together with depositions, interrogatories, admissions on file, and supporting affidavits show that no genuine issue of material fact exists between the parties with respect to the controversy being litigated and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

The movant bears the burden of establishing "there is no triable issue of material fact [by] proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim[.]" *Davis v. Cumberland Cnty. Bd. of Educ.,* 217 N.C. App. 582, 585, 720 S.E.2d 418, 420 (2011) (citations omitted).

"[A]ll inferences of fact must be drawn against the movant and in favor of the nonmovant." *DeWitt v. Eveready Battery Co.,* 355 N.C. 672, 682, 565 S.E.2d 140, 146 (2002) (citation omitted).

## V. Argument

Plaintiffs argue summary judgment is improper because several genuine issues of material fact exist: (1) whether William Leary has standing; (2) whether an incompetent person's property was sold by a purported guardian without court approval; (3) whether Anderson, acting as a guardian, followed the required special proceedings to sell the home and whether she wrongfully retained the proceeds; and, (4) whether Anderson's DPA or Limited POA were sufficient to sell the home.

### A. William Leary's Standing

Gokam Properties argues there is no genuine dispute of material fact of the termination of William Leary's May 2017 POA upon Mrs. Leary's adjudication of incapacity. The record shows Mrs. Leary appointed William Leary as her attorney-in-fact on 7 May 2017. William Leary's affidavit asserts, "I was granted Durable

Power of Attorney on May 7, 2017, which was prior to my mother being declared incompetent in June 2018." Gokam Properties argues the William Leary POA, even if valid, was terminated when Mrs. Leary became incompetent because such power of attorney was not "durable."

¶ 25  A POA/DPA created prior to 1 January 2018 is governed by N.C. Gen. Stat. § 32A-2 (2017). *See* N.C. Gen. Stat. § 32C-1-106(b) (2019). Pursuant to the now-repealed N.C. Gen. Stat. § 32A-8, a POA is "durable" if it was made in writing and either contained: (1) "a statement that it was executed pursuant to the provisions" of Chapter 32A; (2) the words "[t]his power of attorney shall not be affected by my subsequent incapacity or mental incompetence;" (3) the words "[t]his power of attorney shall become effective after I become incapacitated or mentally incompetent;" or, (4) similar words showing the intent of the principal that the authority conferred shall be exercisable notwithstanding the principal's subsequent incapacity or mental incompetence.

¶ 26  Gokam Properties argue William Leary's POA is merely a statutory short form of a general POA pursuant to N.C. Gen. Stat. 32A-1. Gokam Properties assert as a non-durable POA, William Leary's POA was terminated upon the court's adjudication of Mrs. Leary as incompetent on 8 June 2018. *See* N.C. Gen. Stat. § 32C-1-110 (2019) (power of attorney terminates if the power of attorney is not durable and the principal becomes incapacitated).

¶ 27        Plaintiffs argue they have standing to bring this lawsuit pursuant to our

Supreme Court precedent in *In re Lancaster*, 290 N.C. 410, 226 S.E.2d 371 (1976).  In

*In re Lancaster*, Ms. Lancaster was declared incompetent and, as in this case, her

attorney and her heir were presumed to have acted for their own financial interest

and gain, and not in the best interest of the ward. *Id.* at 415, 226 S.E.2d at 375.  The

attorney filed an application on the ward's behalf to have a guardian appointed and

to stop the sale of the ward's land. *Id.* at 416, 226 S.E.2d at 376.  This Court affirmed

the trial court's determination the attorney and the heir did not have standing to

bring the action on behalf of the incompetent woman. *Id.* at 420, 226 S.E.2d at 378.

In response, the Supreme Court of North Carolina remanded and held:

> Ordinarily the one who acts on behalf of an incompetent is his guardian, trustee, or guardian *ad litem* and the incompetent, being under a disability, is not accorded "standing." But where the complaint is that the guardian himself is acting either wickedly, incompetently or in ignorance of the facts, the concept of "standing" must necessarily give way to the primary duty of the court itself as the ultimate guardian to protect the incompetent's interest. In the performance of this duty the court must receive, and should welcome, any pertinent information or assistance from any source. . . . "While . . . [an incompetent] must be represented, in all judicial proceedings, by the guardian, it is entirely proper, *either in his own person or through any friend*, for him to call attention to any matter then pending and under the control of the court, to the end that it may be investigated and his rights protected."

*Id.* at 424–25, 226 S.E.2d at 380 (emphasis original) (citations omitted).

¶ 28 Here, it is not disputed that on 7 May 2017, before Mrs. Leary was adjudicated incompetent, she signed a general POA before a notary appointing William Leary as her attorney-in-fact and giving him broad authority over her finances and real property. This POA was properly recorded prior to any other POA executed by Mrs. Leary. It is disputed if a guardian or holder of a DPA acted on actual authority and on behalf of Mrs. Leary's best interest and for her benefit when her home was sold. It is also disputed if Anderson acted under valid authority or for her own personal interest. In *In re Lancaster*, the ward's attorney was given standing to bring the lawsuit and the court "must receive, and should welcome, any pertinent information or assistance from any source." *Id*. at 425, 226 S.E.2d at 380.

¶ 29 A genuine issue of material fact exists to determine whether Plaintiffs have standing. Although Anderson may initially have served as Mrs. Leary's *de facto* guardian, she failed to qualify to serve as guardian, leaving Mrs. Leary with no legal guardian. Even if we were to presume Anderson was serving as guardian, viewing the evidence in the light most favorable to Plaintiffs, an issue of fact exists whether Anderson was "acting either wickedly, incompetently or in ignorance of the facts" in the sale of the home with knowledge of Mrs. Leary's status and pending special proceeding to deny summary judgment in favor of Gokam Properties. *Id*. at 424, 226 S.E.2d at 380.

**B. Court Appointed Guardian**

¶ 30   Plaintiffs also argue summary judgment is improper because Mrs. Leary's DPA and guardianship is disputed, and the home could only be sold by her court appointed guardian. Our Supreme Court has held the sale of property by "one who is not [a person deemed incompetent's] duly appointed and duly qualified guardian is void." *Buncombe County v. Cain,* 210 N.C. 766, 775, 188 S.E. 399, 404 (1936). The Court further held the purchaser of the incompetent person's property "has sustained no damages by reason of the sale and conveyance, and therefore cannot recover on the official bond of the clerk of the Superior Court[.]" *Id.*

¶ 31   It is undisputed Mrs. Leary was declared incompetent on 8 June 2018 to make legal decisions or to execute legal documents. The trial court held Mrs. Leary was declared "incompetent to a limited extent" and ordered she could not "communicate wishes regarding legal documents or services on her own."

¶ 32   The record is unclear whether Anderson was Mrs. Leary's "duly appointed and duly qualified guardian" at the time of the 8 June 2018 hearing. In the 8 June 2018 Order, the trial court directed "if M. Anderson [was] unable to be bonded and qualify within 90 days of this order, Atty to be appointed G.O.E. [Guardian of Estate]." In the subsequent order dated 9 December 2019 in the same matter, the court found "Ms. Anderson failed to qualify as General Guardian/Guardian of Person (GOP) & failed to stop the sale of [Mrs. Leary's] property. Court shall appoint Guardian of Estate (GOE)."

¶ 33     If Anderson did not possess legal authority to sell Mrs. Leary's home, the sale is void. *Buncombe County*, 210 N.C. at 775, 188 S.E. at 404.  If the sale of Mrs. Leary's home is void, Plaintiff's claims against Gokam Properties should not have been adjudicated on summary judgment.  At minimum, the award of guardianship and timing and recording of relevant forms is in dispute.  Summary judgment for Gokam Properties was improper.

## C. Special Proceeding

¶ 34     Plaintiffs also argue the sale of Mrs. Leary's home is invalid and void as a matter of law because a special proceeding hearing was not held to approve the sale.

> (b) A guardian may apply to the clerk, by verified petition setting forth the facts, to sell, mortgage, exchange, or lease for a term of more than three years, any part of his ward's real estate, and such proceeding shall be conducted as in other cases of special proceedings. The clerk, in his discretion, may direct that the next of kin or presumptive heirs of the ward be made parties to such proceeding.  The clerk may order a sale, mortgage, exchange, or lease to be made by the guardian in such way and on such terms as may be most advantageous to the interest of the ward, upon finding by satisfactory proof [of one to five elements]
>
>  . . . .
>
> (d) All petitions filed under this section wherein an order is sought for the sale, mortgage, exchange, or lease of the ward's real estate shall be filed in the county in which all or any part of the real estate is situated.

N.C. Gen. Stat. § 35A-1301(b), (d) (2019).

¶ 35    A "ward's estate is very carefully regulated, and the sale [of real property] is not allowed except by order of court[.]" *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 11, 161 S.E.2d 453, 462 (1968).  Our Supreme Court has long held that "a contract by a guardian to sell the ward's real estate, in advance of legal authority, is contrary to public policy and void." *LeRoy v. Jacobosky*, 136 N.C. 443, 456, 48 S.E. 796, 800 (1904) (citations omitted).

¶ 36    Mrs. Leary was adjudicated incompetent in June 2018.  Anderson sold Mrs. Leary's home without an order of the court authorizing the sale on 20 September 2019.  A genuine dispute exists regarding Anderson's authority to sell Mrs. Leary's home.  Summary judgment for Gokam Properties was improper.

### D. Anderson's Purported DPA

¶ 37    Plaintiffs argue the trial court erred in finding the January 2017 purported DPA to Anderson is valid.  During the hearing on summary judgment, the court questioned whether a pre-existing POA survives an incompetency proceeding and allowed the parties to submit supplemental briefing on that narrow issue.

¶ 38    Plaintiffs further argue even if the issue is relevant, summary judgment was not proper because: (1) an agent established by a DPA is still required to obtain court approval prior to selling the home of an individual declared incompetent by a court pursuant to N.C. Gen. Stat. § 35A-1301(b); (2) there is an issue of fact regarding whether a valid DPA existed prior to Mrs. Leary's declaration of incompetence; and,

(3) if the 11 January 2017 DPA existed, there is an issue of fact regarding Mrs. Leary's capacity to grant a DPA in 2017.

### 1. *Valid POA/DPA*

¶ 39     Our General Statutes provide: "If, after a principal executes a power of attorney, the clerk of superior court appoints a guardian . . . the agent is accountable to the guardian or the fiduciary as well as to the principal. N.C. Gen. Stat. § 32C-l-108(b) (2019).

¶ 40     In June 2018, the court declared Mrs. Leary partially incompetent concerning legal documents and decisions. The court ordered a general guardian be appointed and gave Anderson the opportunity to qualify and serve as Mrs. Leary's guardian if she qualified within 90 days. Anderson filed the purported DPA with the register of deeds more than a year later on 21 October 2019. On 9 December 2019, the court found and concluded "Ms. Anderson failed to qualify as General Guardian/Guardian of Person (GOP) & failed to stop the sale of Ward's property."

¶ 41     Plaintiffs argue Anderson failed to qualify as Mrs. Leary's guardian, and any alleged pre-existing DPA could not be used to convey Mrs. Leary's home until a guardian was appointed by the court and an order of sale had been entered. Mrs. Leary had been declared incompetent and an attorney-in-fact under a DPA is accountable to the court appointed guardian, as well as their principal, for the sale and the accounting of any proceeds therefrom. N.C. Gen. Stat. § 32C-1-108(b)(2019).

### 2. *Disputed January 2017 DPA*

¶ 42        Plaintiff argues summary judgment was improper because a material issue of
fact exists pertaining to the validity of Anderson's January 2017 DPA.

¶ 43        "A power of attorney executed in this State before January 1, 2018, the
effective date of this Chapter is valid if its execution complied with the law of this
State as it existed at the time of execution." N.C. Gen. Stat. § 32C-1-106.  When the
purported DPA was created, the North Carolina statutes provided:

> A durable power of attorney is a power of attorney by which
> a principal designates another his attorney-in-fact in
> writing and the writing contains a statement that it is
> executed pursuant to the provisions of this Article or the
> words "This power of attorney shall not be affected by my
> subsequent incapacity or mental incompetence," or . . .
> similar words showing the intent of the principal that the
> authority conferred shall be exercisable notwithstanding
> the principal's subsequent incapacity or mental
> incompetence.

N.C. Gen. Stat. § 32A-8 (2017) (repealed by Session Law 2017-153, s. 2.8).  The
current statute governing the validity of DPAs, provides "[a] power of attorney
created pursuant to this Chapter is durable unless the instrument expressly provides
that it is terminated by the incapacity of the principal."  N.C. Gen. Stat. § 32C-1-104
(2019).  N.C. Gen. Stat. § 32C-1-105 (2019) provides:

> A power of attorney must be (i) signed by the principal or
> in the principal's conscious presence by another individual
> directed by the principal to sign the principal's name on the
> power of attorney and (ii) acknowledged. A signature on a

> power of attorney is presumed to be genuine if the principal acknowledges the signature before a notary public or other individual authorized by law to take acknowledgements.

¶ 44 "[W]hen a mentally incompetent person executes a contract or deed before their condition has been formally declared, the resulting agreement or transaction is voidable. *O'Neal v. O'Neal*, 254 N.C. App. 309, 314, 803 S.E.2d 184, 188 (2017). Further, "a contract or deed executed after a person has been adjudicated incompetent is absolutely void absent proof that the person's mental capacity was restored prior to executing the instrument. *Id.* at 314–15, 803 S.E.2d at 188–89.

¶ 45 Here, the medical records from Mrs. Leary's 12 January 2017 visit with Dr. Foster stated Anderson was working to secure a power of attorney but had not done so as of that date. The medical records state, "her daughter is seeking power of attorney and guardianship asthma (sic) some areas no longer able to make informed decisions," and "[t]oday I did advise her daughter that she cannot stand alone and I do suggest that she obtain power of attorney to handle all of her affairs." Dr. Foster wrote "I am asking that her daughter (Rita Leary Anderson) assume power of attorney for Ms. Leary."

¶ 46 The medical records tend to show Mrs. Leary had not yet issued a DPA to Anderson as of 12 January 2017 and Dr. Foster was requesting Anderson to obtain a guardianship of Mrs. Leary or a DPA. The undisputed evidence further demonstrates the purported 11 January 2017 DPA was not filed with the Mecklenburg County

Register of Deeds until 21 October 2019, after the sale of her home had closed. This document was recorded 11 days after this lawsuit was filed on 10 October 2019.

¶ 47 Anderson stated under oath Mrs. Leary executed the Limited Power of Attorney to Sell Real Estate on 6 September 2019, nearly 15 months after Mrs. Leary was adjudicated incompetent.

¶ 48 A reasonable jury could find Mrs. Leary's doctor would not have suggested and advised Anderson to become Mrs. Leary's POA at the 12 January 2017 doctor's visit if Mrs. Leary had already executed a DPA naming Anderson her agent the day before.

¶ 49 A reasonable jury could also find Anderson's failure to record the purported 11 January 2017 DPA for over two and one-half years, and until almost a month after the home was sold, and 11 days after this lawsuit was filed demonstrates the 11 January 2017 DPA was not actually executed on that date or it was not executed by Mrs. Leary. A reasonable jury could also find if the 11 January 2017 general DPA is valid, then Anderson's self-admitted subsequent Limited Power of Attorney to Sell Real Estate would not have been necessary. A reasonable jury could also find Mrs. Leary lacked capacity to authorize the 6 September 2019 limited POA after she was adjudicated incompetent in June 2018.

¶ 50 Genuine issues of material fact existed regarding Anderson's authority, her purported DPA and limited POA to sign the deed without prior court approval and, the proper disposition of the proceeds from the sale.

## VI. *Lis Pendens*

For the foregoing reasons, Gokam Properties was not entitled to summary judgment. The trial court's cancellation of Plaintiffs' Notice of *Lis Pendens* is error as record notice of this pending litigation is proper. *See* N.C. Gen. Stat. § 1-116(a),(c) (2019).

## VII. Conclusion

Summary judgment is a well-established procedural safeguard with protections built in for the nonmoving party. Upon *de novo* review, genuine issues of material fact exist in the record before us. We reverse the summary judgment for Gokam Properties and the cancellation of Plaintiffs' Notice of *Lis Pendens* and remand for further proceedings. *It is so ordered.*

REVERSED AND REMANDED.

Chief Judge STROUD and Judge DILLON concur.