Present:  All the Justices

MATTHEW W. CLINE

                                              OPINION BY
v.      Record No. 110650           JUSTICE S. BERNARD GOODWYN
                                              June 7, 2012
DUNLORA SOUTH, LLC

              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                 Paul M. Peatross, Jr., Judge Designate

     In this appeal, we consider whether the common law tort

principles of this Commonwealth allow for the recovery of

personal injury damages sustained due to a tree falling from

private land onto a vehicle traveling on a public highway.

                              Background

     On February 12, 2010, Matthew W. Cline (Cline) filed an

action in the Circuit Court of Albemarle County against Dunlora

South, LLC (Dunlora) and other entities for injuries he

sustained when a tree fell on his vehicle as he was driving on

a public highway.  The defendants filed demurrers, and

following briefing, the circuit court heard oral argument.  At

argument, Cline verbally requested and was granted a nonsuit on

his claims against all defendants except Dunlora.  The circuit

court sustained Dunlora's demurrer, and it granted Cline leave

to amend his complaint.

     Cline filed an amended complaint alleging negligence and

that Dunlora's conduct constituted a nuisance because

"Dunlora's lack of care, inspection, servicing, and/or

maintenance of the subject property and tree was a condition that imperiled the safety of the public highway immediately adjacent to the property and tree, creating a danger and hazard to motorists and/or pedestrians." Dunlora filed a demurrer. After reviewing briefs, the circuit court sustained the demurrer, without leave to amend. Cline appeals.

Facts

The relevant facts are those alleged in Cline's amended complaint. Cline was driving on Rio Road East near its intersection with Pen Park Drive when a tree fell and crushed the roof, windshield and hood of the vehicle Cline was driving. Cline suffered severe and permanent injuries, including fractures of his cervical spine.

The tree was located approximately 15.6 feet from the edge of Rio Road East, on property "owned and/or controlled, inspected, maintained and/or serviced" by Dunlora. At the time of the incident, Rio Road East experienced traffic at a volume of 25,000 vehicles per day. The tree, approximately 25 inches in diameter, was "dying, dead, and/or rotten" at the time it fell, and had been in this condition for a period of "many years and exhibited visible signs of decay, which were open, visible and/or obvious," and "[t]he tree's dead or decaying condition was or should have been known by Defendant Dunlora." Also, "Dunlora knew or should have known of the hazards

2

presented by the dead, dying and/or rotten tree adjacent to the public highway."

## Analysis

Cline argues that the circuit court erred in ruling that landowners in Virginia are not liable for personal injuries caused by trees that pose an imminent danger or cause actual harm to persons using an adjoining highway.  He claims that this Court's opinion in Fancher v. Fagella, 274 Va. 549, 650 S.E.2d 519 (2007), determined that a landowner is liable for reasonably foreseeable property damage caused by trees located on adjacent property, and that the authorities relied upon by this Court in Fancher allow a claim under the facts alleged in Cline's amended complaint.  Furthermore, he asserts that traditional principles of Virginia tort law support a claim as alleged in the amended complaint.[1]

Dunlora counters that this Court's ruling in Fancher does not allow a cause of action for personal injuries arising from a tree falling on a public highway.  It asserts that imposition of a duty on an owner of lands adjacent to a public highway to examine bordering trees would be unreasonable.  It also claims that it is the responsibility of VDOT to protect travelers on

---

[1] Cline's nuisance claim is based upon Dunlora's alleged conduct, and stands or falls on whether Dunlora's alleged conduct was negligent.

3

public roadways from injuries caused by dangerous instrumentalities immediately adjacent to a roadway.

The legal question presented by a circuit court's decision to sustain a demurrer requires application of a de novo standard of review. E.g., Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). In conducting this review, this Court accepts as true the factual allegations of the complaint, its attachments, and the reasonable inferences that follow, but not the pleader's legal conclusions. E.g., Yuzefovsky v. St. John's Wood Apts., 261 Va. 97, 102, 540 S.E.2d 134, 136-37 (2001). Evaluating allegations of negligence, this Court determines whether the factual allegations are sufficient to establish a duty of care. Id. at 106, 540 S.E.2d at 139. "Whether such duty exists is 'a pure question of law.' " Id. (quoting Burns v. Johnson, 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995)).

At common law, a landowner owed no duty to those outside the land with respect to natural conditions existing on the land, regardless of their dangerous condition. See, e.g., Driggers v. Locke, 913 S.W.2d 269, 271-72 (Ark. 1996); Giles v. Walker, [1890] 24 Q.B.D. 656 (Eng.); W. Page Keeton, et al., Prosser & Keeton on Torts 390 (5th ed. 1984).

> [T]he courts in Virginia operate under a statutory
> mandate which provides that the common law of England,
> if not repugnant to the principles of the Bill of

4

Rights or the Virginia Constitution, continues in full
force and effect within the State, and shall "be the
rule of decision, except as altered by the General
Assembly," Code § [1-200]. But this does not mean
that common law rules are forever chiseled in stone,
never changing. The common law is dynamic, evolves to
meet developing societal problems, and is adaptable to
society's requirements at the time of its application
by the Court.

Williamson v. Old Brogue, Inc., 232 Va. 350, 353, 350 S.E.2d

621, 623 (1986).

This Court has never recognized that principles of

ordinary negligence apply to natural conditions on land, but in

Smith v. Holt, 174 Va. 213, 219, 5 S.E.2d 492, 495 (1939), we

determined that an adjoining landowner had a nuisance cause of

action if a sensible injury was inflicted by the protrusion of

roots from a noxious tree or plant on the property of an

adjoining landowner. The Court also eschewed the English

common law distinction between natural and cultivated

vegetation.[2] See id. at 214, 216-17, 5 S.E.2d at 493, 494.

The duty recognized by this Court in Smith is in accord

with the broad common law maxim: "sic utere tuo ut alienum non

laedas" – one must so use his own rights as not to infringe

upon the rights of another. See, e.g., Burwell v. Hobson, 53

Va. (12 Gratt.) 322, 325 (1855). The principle of sic utere

---

[2] See Restatement (Second) of Torts §§ 839, 840
(recognizing a duty to control vegetation encroaching upon
adjoining land only if such vegetation is "artificial" –
planted or maintained).

5

precludes use of land so as to injure the property of another. See, e.g., Smith, 174 Va. at 215-18, 5 S.E.2d at 493-95 (citing with approval Mississippi court's use of that principle as rationale for what was adopted as the "Virginia Rule"), overruled on other grounds by Fancher, 274 Va. at 555-56, 650 S.E.2d at 522; Raleigh Court Corp. v. Faucett, 140 Va. 126, 134, 124 S.E. 433, 435 (1924) (discussing the axiom with respect to surface waters).

In Fancher, the Court reexamined the issue of injury caused by the encroachment of vegetation onto adjoining property, and modified the "Virginia rule" expressed in Smith in two ways: (1) discarding the subjective requirement of "noxious" nature, and (2) imposing a limited duty on owners of adjoining residential lots to protect against actual or imminent injury to property caused by intruding branches and roots. 274 Va. at 555-56, 650 S.E.2d at 522.

Fancher concerned a sweet gum tree that was allegedly causing structural damage to an adjacent townhome property through its root system and overhanging branches. 274 Va. at 552, 650 S.E.2d at 520. Upon considering the approaches of various other jurisdictions to determine whether a nuisance exists and a right of action arises when vegetation encroaches across property lines, as well as the "Virginia Rule" stated in

6

Smith, we adopted the Hawaii approach,[3] as expressed by the Supreme Court of Tennessee: " '[E]ncroaching trees and plants may be regarded as a nuisance when they cause actual harm or pose an imminent danger of actual harm to adjoining property.' " Id. at 556, 650 S.E.2d at 522 (quoting Lane v. W.J. Curry & Sons, 92 S.W.3d 355, 364 (Tenn. 2002)).

In Fancher, this Court articulated a rule allowing relief where trees encroaching onto the land of another constitute a nuisance, and held that trees encroaching upon the property of another are a nuisance where they cause actual harm or the imminent danger of actual harm. 274 Va. at 555-56, 650 S.E.2d at 522. Fancher therefore recognized that a trial court must determine whether circumstances are sufficient to "impose a duty on the owner of a tree to protect a neighbor's land from damage caused by its intruding branches and roots." Id. at 556-57, 650 S.E.2d at 523.[4]

Cline asserts that the principles stated in Fancher, logically extended, dictate finding the existence of a duty in this case. We disagree. The rule expressed in Fancher,

---

[3] This Court overruled the "Virginia Rule" stated in Smith v. Holt, "insofar as it condition[ed] a right of action upon the 'noxious' nature of a plant that sends forth invading roots or branches into a neighbor's property." Fancher, 274 Va. at 555, 650 S.E.2d at 522.

[4] Even in Smith, this Court recognized such a duty, albeit limited to "noxious" plants. 174 Va. at 219, 5 S.E.2d at 495.

7

allowing imposition of a duty on the owner of a tree to protect a neighbor's land from damage caused by the tree, addresses a narrow category of actions arising from nuisance caused by the encroachment of vegetation onto adjoining improved lands.[5]  See id.  The duties imposed in Fancher and Smith are dramatically different than duties necessary to support an action for personal injury predicated upon a duty of a landowner regarding the natural decline of trees on his or her property, which is adjacent to a roadway.  The Fancher line of precedent does not support a duty on the part of a landowner to inspect and cut down sickly trees that have the possibility of falling on a public roadway and inflicting injury.  Thus, Fancher does not support finding a cause of action in the instant matter, where the alleged injuries arose from an allegedly dead or decaying tree falling from private land onto a vehicle traveling on a public highway.

In the case of Price v. Travis, 149 Va. 536, 140 S.E. 644 (1927), this Court stated:

> It is well settled that public highways, whether they be in the country or in the city, belong, not partially but entirely, to the public at large, and

---

[5]  In Fancher, we expressly stated that "[i]t would be clearly unreasonable to impose [a duty to protect a neighbor's land from damage caused by intruding tree branches and roots] upon the owner of historically forested or agricultural land, but entirely appropriate to do so in the case of parties, like those in the present case, who dwell on adjoining residential lots."  274 Va. at 557, 650 S.E.2d at 523.

8

that the supreme control over them is in the legislature. This plenary power over the streets to a certain extent is conferred by the legislature of the State upon the cities and towns thereof.

. . . .

Any part of the highway may be used by the traveler, and in such direction as may suit his convenience or taste. No private person has a right to place any obstruction which interferes with this right on any part of the highway within its exterior limits. . . . The duty of the [public entity that maintains the highway] is to perform a positive act in the preparation and preservation of a sufficient traveled way. The duty of others is to abstain from doing any act by which any part of the highway would become more dangerous to the traveler than in a state of nature, or than in the state in which the [public entity that maintains the highway] has left it.

Id. at 541-42, 140 S.E. at 646 (citations and internal quotation marks omitted).[6]

The duty owed by adjoining property owners is to refrain from engaging in any act that makes the highway more dangerous than in a state of nature or in the state in which it has been left. Id. There were no allegations in the amended complaint to suggest that Dunlora engaged in any affirmative act that caused the property adjoining the highway to be different than in its natural state or different from the condition in which it was left when the road was built. The allegations of the

---

[6] The General Assembly has vested the Commissioner of Highways with the power to do all acts necessary for maintaining and preserving state roads. See Code § 33.1-13. The duty of VDOT or any other entity responsible for

9

amended complaint are stated in terms of a failure to act, and the issue is whether there is a duty requiring a landowner to act.

In discerning whether common law tort principles of this Commonwealth impose a duty upon landowners to protect individuals traveling on an adjoining public highway from natural conditions on the landowner's property, we note that no such duty existed under relevant English common law.  Also, this Court has never recognized, nor do our precedents support, a ruling that a landowner owes a duty to protect travelers on an adjoining public roadway from natural conditions on his or her land.  Thus, the circuit court did not err.

Conclusion

Accordingly, for the reasons stated, we will affirm the judgment of the circuit court and enter final judgment.

Affirmed and final judgment.

JUSTICE LEMONS, with whom JUSTICE MIMS and JUSTICE POWELL join, dissenting.

Well known and ordinary principles of negligence should control this case.

In Smith v. Holt, 174 Va. 213, 219, 5 S.E.2d 492, 495 (1939), we held that an adjoining landowner had a cause of

---

maintaining the safety of the roadway presents a question not now before us.

10

action if a sensible injury was inflicted by the protrusion of roots from a noxious tree or plant on the property of an adjoining landowner.

In Fancher v. Fagella, 274 Va. 549, 650 S.E.2d 519 (2007), we reexamined the issue of injury caused by the encroachment of vegetation onto adjoining property.  Fancher concerned a situation involving a sweet gum tree that allegedly caused structural damage to an adjacent townhome property through its root system and overhanging branches.  274 Va. at 552, 650 S.E.2d at 520.  Upon considering the approaches of various other jurisdictions to determine whether a nuisance exists and a right of action arises when vegetation encroaches across property lines, as well as the "Virginia Rule" stated in Smith v. Holt, 174 Va. at 219-20, 5 S.E.2d at 495, we adopted what is called "the Hawaii approach."[1]  The Supreme Court of Tennessee has explained this approach as follows:  " '[E]ncroaching trees and plants may be regarded as a nuisance when they cause actual harm or pose an imminent danger of actual harm to adjoining property.' "  Francher, 274 Va. at 556, 650 S.E.2d at 522 (quoting Lane v. W.J. Curry & Sons, 92 S.W.3d 355, 364 (Tenn. 2002)).

---

[1] We overruled the "Virginia Rule" stated in Smith v. Holt, "insofar as it condition[ed] a right of action upon the 'noxious' nature of a plant that sends forth invading roots or

11

In *Fancher*, we articulated a rule allowing relief where trees encroaching onto the land of another constitute a nuisance, and we held that trees encroaching upon the property of another are a nuisance where they cause actual harm or the imminent danger of actual harm. 274 Va. at 555-56, 650 S.E.2d at 522. *Fancher* therefore recognized that a trial court must determine whether circumstances are sufficient to "impose a duty on the owner of a tree to protect a neighbor's land from damage caused by its intruding branches and roots." *Id.* at 556-57, 650 S.E.2d at 523.[2]

The duty recognized by this Court in *Fancher* is in accord with the broad common law maxim: "*sic utere tuo ut alienum non laedas*" — one must so use his own rights as not to infringe upon the rights of another. See, e.g., *Burwell v. Hobson*, 53 Va. (12 Gratt.) 322, 325 (1855). The principle of *sic utere* precludes negligent use of land so as to injure the property of another. See, e.g., *Smith*, 174 Va. at 215-18, 5 S.E.2d at 493-95 (citing with approval Mississippi court's use of that principle as rationale for what was adopted as the "Virginia Rule"), overruled on other grounds by *Fancher*, 274 Va. at 555-56, 650 S.E.2d at 522; *Raleigh Court Corp. v. Faucett*, 140 Va.

_____

branches into a neighbor's property." *Fancher*, 274 Va. at 555, 650 S.E.2d at 522.

    [2] Even in *Smith*, this Court recognized such a duty, albeit limited to "noxious" plants. 174 Va. at 219, 5 S.E.2d at 495.

12

126, 134, 124 S.E. 433, 435 (1924) (discussing the axiom with respect to surface waters).

Considering Virginia precedent and applying the common law principle of sic utere to the question of first impression presented in this matter, we should recognize that principles of ordinary negligence apply to natural conditions on land. The Restatement has provided guidance to various courts examining the not entirely unusual situation giving rise to the case before us.

The Restatement articulates limited exceptions to the non-liability rules governing natural conditions:

> A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

Restatement Second of Torts § 363(2). Correspondingly,

> [a] possessor of land who knows or has reason to know that a public nuisance caused by natural conditions exists on his land near a public highway, is subject to liability for failure to exercise reasonable care to prevent an unreasonable risk of harm to persons using the highway.

Id. § 840(2).[3] The Restatement expresses this imposition of liability "with a caveat for trees in rural areas" however. Id. § 840(2) cmt. c. Thus, in rural areas,

---

[3] As stated above, these sections abrogate the common law rule, which declined to impose landowner liability. "[A]

13

> [t]here is no duty to inspect for the purpose of discovering a dangerous natural condition. But if the possessor knows of the condition or has reason to know of it . . . , he does have a duty to act reasonably in regard to its removal. It is in connection with the reason to know of the condition that the distinction between urban and rural areas becomes significant. The size and condition of the possessor's tract of land, the nature of the highway and whether the possessor lives on the land or frequently travels the highway are all pertinent to the decision; and an arbitrary distinction between urban and rural property becomes meaningless and unjustified, especially when many "rural" areas are extensively populated.

Id.

Despite the influence of the Restatement, across the jurisdictions addressing the liability of landowners resulting from trees falling on public highways, multiple approaches have developed. See, e.g., Hensley v. Montgomery Cnty., 334 A.2d 542, 545 (Md. Ct. Spec. App. 1975); Gibson v. Hunsberger, 428 S.E.2d 489, 491-92 (N.C. Ct. App. 1993).

A number of jurisdictions have adopted a rule governed by the urban/rural distinction, holding that in a rural area, there is no duty to inspect trees in a state of nature, as such a duty would prove too onerous for the owners of large, unimproved tracts of rural land abutting public highways. See, e.g., Chambers v. Whelen, 44 F.2d 340, 341 (4th Cir. 1930) (applying West Virginia law); Lemon v. Edwards, 344 S.W.2d 822,

---

possessor of land is not liable to persons outside the land for a nuisance resulting solely from a natural condition of the

14

823 (Ky. 1961); Zacharias v. Nesbitt, 185 N.W. 295, 296 (Minn. 1921); Ford v. South Carolina Dep't of Transp., 492 S.E.2d 811, 814 (S.C. Ct. App. 1997).

An alternative, referenced in the Restatement comments, to the strict urban/suburban dichotomy is a blended inquiry, examining the size, type and use of the highway and land to determine the proper liability standard – whether there is a duty to inspect. See, e.g., Miles v. Christensen, 724 N.E.2d 643, 646-47 (Ind. Ct. App. 2000) (rejecting use of the urban/rural categorization in resolving the duty owed); Hensley, 334 A.2d at 546-47; Taylor v. Olsen, 578 P.2d 779, 782 (Or. 1978); Lewis v. Krussell, 2 P.3d 486, 491 (Wash. Ct. App. 2000). These cases are contrasted with Brandywine Hundred Realty Co. v. Cotillo, 55 F.2d 231, 231 (3d Cir. 1931), which imposes a duty to inspect suburban forests and urban forests alike, and Medeiros v. Honomu Sugar Co., 21 Haw. 155, 158-59 (1912), which imposes a general duty to inspect trees adjacent to public highways.

Another option is simple application of ordinary negligence principles, imposing a duty of reasonable care upon all landowners, but absent a duty to inspect trees. See Gibson, 428 S.E.2d at 491 ("There is no duty to inspect for the purpose of discovering a dangerous natural condition. But if

land." Restatement (Second) of Torts § 840(1).

15

the possessor knows of the condition or has reason to know of it . . . , he does have a duty to act reasonably in regard to its removal.") (quoting Restatement (Second) of Torts § 840(2), cmt. c).[4] Many jurisdictions, regardless of whether they impose a duty to inspect in various circumstances, require the presence of patent visible decay for the imposition of liability, a condition that tends towards imposition of a uniform duty to exercise reasonable care. See, e.g., Willis v. Maloof, 361 S.E.2d 512, 513 (Ga. Ct. App. 1987) ("The owner of a tree is liable for injuries . . . only if he knew or reasonably should have known the tree was diseased, decayed or otherwise constituted a dangerous condition.");[5] Pulgarin v. Demonteverde, 880 N.Y.S.2d 571, 571 (N.Y. App. Div. 2009) ("In cases involving fallen trees, a property owner will be held liable only if he or she knew or should have known of the

---

[4] Although Gibson cites section 363(2) of the Restatement, the rule expressed by the court does not draw an urban/suburban distinction. Id. at 492; see also Wallen v. Riverside Sports Ctr., 618 S.E.2d 858, 861 (N.C. Ct. App. 2005) ("Increasingly, the courts of various states have moved away from the rigid urban-rural analysis towards imposing a duty of reasonable care upon a landowner based on the attendant circumstances. . . . In Gibson v. Hunsberger, this Court adopted this approach in a case involving a tree falling on a highway, in what was clearly a rural setting.").

[5] Georgia, despite this statement tending towards a universal duty of reasonable care, has recognized the urban/rural distinction. See, e.g., Wade v. Howard, 499 S.E.2d 652, 654-55 (Ga. Ct. App. 1998).

16

dangerous condition of the tree . . . .") (citing Ivancic v. Olmstead, 488 N.E.2d 72, 73 (N.Y. 1985)).

Considering the various approaches to liability arising from trees adjacent to roadways in concert with the longstanding negligence principles articulated above, we should recognize a general duty of reasonable care applicable in all such cases.  We should decline to impose a duty to inspect trees for defects, and we should adopt the following rule:

> [A] landowner has a duty to exercise reasonable care regarding natural conditions on his land which lies adjacent to a public highway in order to prevent harm to travelers using the highway. A landowner is subject to liability only if he had actual or constructive notice of a dangerous natural condition.

Gibson, 428 S.E.2d at 492.  Accordingly,

> [t]he owner of a tree is liable for injuries . . . only if he knew or reasonably should have known the tree was diseased, decayed or otherwise constituted a dangerous condition. "[T]here is no duty to consistently and constantly check all . . . trees for non-visible rot as the manifestation of decay must be visible, apparent, and patent . . . ."

Willis, 361 S.E.2d at 513 (quoting Cornett, 237 S.E.2d at 524).

"The alleged defect must be 'readily observable' so that the landowner can take appropriate measures to abate the threat." Lewis, 2 P.3d at 491 (quoting Ivancic, 488 N.E.2d at 73).

Realizing it is unreasonable to impose the same expectations upon the owners of large, rural and historically agricultural or forested tracts of land as that imposed upon the owner of a single lot in an unforested urban area, we

17

should adopt the rule that determining whether a landowner had constructive notice of a dangerous tree is a fact-specific inquiry, depending upon a variety of factors, including the character of the land, the nature and frequency of the landowner's use, the outward appearance of the tree, and whether persons noticed and notified the owner of the condition of the tree.  See Gibson, 428 S.E.2d at 492 ("[T]here is no evidence in the record from which constructive notice could be found.  The tree was leaning but this was common in the area and the tree appeared to be healthy and sound.  The tree was not leaning out over the road.  It was not readily observable that the tree would fall into the road.  Not one of the witnesses who observed the tree prior to its fall thought it was necessary to report the leaning tree to the Sheriff's Department or the Department of Transportation.").

Following well established principles governing liability at common law: a landowner should be liable for injuries resulting from a tree falling from his or her property onto a public highway if he or she knows or has reason to know of the imminent danger presented by the tree's death, decay or other visible defect.  Cline has pled that (1) Dunlora owned the property upon which the tree was located at the relevant time; (2) the tree was "dying, dead, and/or rotten" and had been in this condition "for many years"; (3) the tree exhibited "open,

18

visible and/or obvious" signs of decay; (4) Dunlora "inspected, serviced and/or maintained the subject tree"; (5) "Dunlora was on notice or should have been on notice of the subject dead, dying, or rotten tree"; and (6) Dunlora "knew or should have known" of the hazard presented by the tree, given its condition, being adjacent to a busy roadway. Because Cline pled that the subject tree constituted a sufficiently dangerous condition to those using the roadway, of which Dunlora had actual or constructive notice, I would hold that the circuit court erred in sustaining the demurrer.[6]

I respectfully dissent.

---

[6] The duty of VDOT or any other entity responsible for maintaining the safety of the roadway presents a question not now before us.

19