COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Beales, O'Brien and Lorish
Argued at Lexington, Virginia


RONNIE HARLESS AND MELISSA HARLESS,
 CO-ADMINISTRATORS FOR THE ESTATE OF
 JACKSON C. HARLESS, JR., DECEASED
                                                          OPINION BY
v.        Record No. 0098-24-3          JUDGE MARY GRACE O'BRIEN
                                                          MARCH 25, 2025
SHARON B. WILLIAMS


FROM THE CIRCUIT COURT OF SCOTT COUNTY
John C. Kilgore, Judge

Joshua Ely (Ely and Co. Law Offices, PLC, on briefs), for
appellants.

James N. L. Humphreys (Hunter, Smith & Davis, LLP, on brief), for
appellee.


Ronnie and Melissa Harless (collectively, "Harless"), as Co-Administrators for the Estate

of Jackson C. Harless, Jr. ("Jackson"), appeal the circuit court's partial final judgment sustaining

Sharon B. Williams's demurrer to their wrongful death lawsuit.  Harless argues that the circuit

court erred by entering a partial final judgment for Williams and contends that the amended

complaint sufficiently alleged notice, duty, and nuisance.  Williams has moved to dismiss this

appeal, arguing that the notice of appeal was late.  We conclude that the appeal is properly before

us but find no error in the circuit court's judgment, and therefore we affirm.

BACKGROUND[1]

Sharon and Maurice Williams owned property adjacent to a farm operated by Arthur and Cody Grills. Sharon Williams permitted the Grillses to keep their horses on her property, "as long as the Grills[es] kept a fence up . . . and maintained the property as regards to the mowing and 'bush-hogging.'" The fence was not at the property line; it was a fence Williams had erected "inside the . . . property itself."

In June 2020, the Grillses' horse escaped from Williams's property and ran onto a nearby public highway. The horse escaped through a part of the fence that had been damaged when an ash tree or its limb fell on it. Jackson and his father were driving to work, and their car collided with the horse, killing Jackson.

Harless filed a wrongful death lawsuit against Williams, the Grillses, and other defendants.[2] The operative (third) amended complaint asserted "[n]egligence and/or [n]uisance" against Williams. It alleged that Williams knew that the Grillses kept "wild" animals on her property and that the Grillses' animals had escaped previously when the fence was damaged by falling trees and dead branches. It also alleged that Williams's property had "numerous ash trees" located near the fence, the trees were "dying," and they had fallen on the fence "many times previously." It alleged that Williams knew or should have known of the "continuing issues with the fencing, trees, and

---

[1] In reviewing a circuit court's judgment sustaining a demurrer, "we 'accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff.'" *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). "Furthermore, we draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.* But "we do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences." *Doe v. Baker*, 299 Va. 628, 641 (2021) (quoting *Coward*, 295 Va. at 358).

[2] The Grillses operated their farm on property leased from Caltan, LLC; the amended complaint also named Caltan, LLC, Maurice Williams, and the estate of Jackson's father as defendants. Jackson's father was driving the car, was injured in the accident, and died soon thereafter.

animals escaping" from her property. Further, Williams owed a duty not to "allow [the] trees to exist as they did" when she "knew or should have known of the dangers of allowing such trees to exist in that condition." Thus, the amended complaint asserted, Williams negligently allowed the ash trees to remain on her property in a condition that "continually damaged the fence . . . and allowed animals to escape" and failed "to address or maintain those trees as advised by [f]ederal and [s]tate [a]gencies."[3]

Williams demurred, arguing that she owed no duty to prevent the accident because it was caused by a horse she did not own. In response, Harless contended that the amended complaint sufficiently alleged that Williams owed duties to Jackson (1) not to "allow trees to exist on her property when . . . those trees existed in a condition that would cause" a horse to escape into the road, resulting in an "unnatural change to the roadway"; and (2) not to "allow trees . . . to exist in a condition that encroached, fell upon, or otherwise caused a nuisance . . . which resulted in damages to another."

After a hearing, the circuit court sustained Williams's demurrer with prejudice, holding that the facts alleged in the amended complaint did not establish a duty for Williams to act and did not sufficiently allege a claim for nuisance liability. The court entered an order on July 24, 2023, labeled "Final Order only as to Defendant Sharon B. Williams" ("July order"). The July order acknowledged that "[t]his action remains pending as to all other defendants" but provided that it was a "final, appealable decision on the merits as to the cause of action alleged against [Williams]."

---

[3] The amended complaint cited government materials discussing the "various issues affect[ing] ash trees in North America," particularly "infestation[s] of the [e]merald [a]sh [b]orer," which causes affected trees to "become extremely brittle and subject to decay or falling." The government materials advised that ash trees are "uniquely susceptible" to this infestation and that "all trees of this species will be infested and likely die." The amended complaint further relied on a Virginia Department of Forestry publication, issued about two years before the accident, advising landowners with ash trees on their property to either treat or remove the trees unless the trees are "not a safety hazard" because the trees would "likely die" otherwise.

In August 2023, Harless asked the circuit court to certify its July order for interlocutory appeal pursuant to Code § 8.01-675.5. The motion cited, among other "controlling statutes and cases," Code § 55.1-2834, which imposes liability on an "owner or manager" of domesticated livestock whose animals trespass on another's land.

Williams opposed interlocutory certification, arguing that the July order was final as to the claims against her. In the alternative, she asked the circuit court to enter an amended "partial final judgment" order compliant with Rule 1:2.[4] Harless objected to the entry of a partial final judgment order, arguing that Williams's interests were not "separate and distinct" from those of the remaining defendants, as required by Rule 1:2. But before the hearing on the partial final judgment issue, Harless moved to nonsuit the remaining defendants.

At the hearing, the parties argued about whether the July order was final and whether entry of a partial final judgment only as to Williams was appropriate. The circuit court found that the claims against Williams were "completely separate" from the claims against the other defendants and ruled that the entry of a partial final judgment order pursuant to Rule 1:2 was appropriate. In a December 11, 2023 order, the circuit court sustained Williams's demurrer, dismissed the claims against her with prejudice, and made the findings required for a partial final judgment under Rule

---

[4] An appealable "Partial Final Judgment" order in a multi-party case under Rule 1:2 must be expressly labeled as such an order and

> contain[] express findings that (i) the interests of such parties, and the grounds on which judgment is entered as to them, are separate and distinct from those raised by the issues in the claims against remaining parties, and (ii) the results of any appeal from the partial final judgment cannot affect decisions of the claims against the remaining parties, and (iii) decision of the claims remaining in the trial court cannot affect the disposition of claims against the parties subject to the Partial Final Judgment if those parties are later restored to the case by reversal of the Partial Final Judgment on appeal.

1:2. That same day, the circuit court granted Harless's motion to nonsuit the remaining defendants.[5] Harless filed a notice of appeal on January 5, 2024, and Williams has moved to dismiss the appeal as untimely.

## ANALYSIS

### I. Timeliness of Notice of Appeal

"Except as otherwise provided by statute, no appeal will be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, . . . counsel files with the clerk of the trial court a notice of appeal." Rule 5A:6(a); *see also* Code § 8.01-675.3 ("[A] notice of appeal to the Court of Appeals . . . shall be filed within 30 days from the date of any final judgment order, decree, or conviction."). "'To determine the timeliness of a notice of appeal from a final judgment, obviously it is first necessary to determine the date of the action of the trial court that constitutes the final judgment,' which is generally marked by the entry of a final order." *Jefferson v. Commonwealth*, 298 Va. 473, 475 (2020) (quoting *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 560 (2002)). "The question of whether a particular order is a final judgment is a question of law" that we review de novo. *Ritchie v. Commonwealth*, 74 Va. App. 328, 332 (2022).

Williams urges us to dismiss the appeal, arguing that the July order was final, rendering Harless's January 2024 notice of appeal untimely under Rule 5A:6. Williams points to the July order's title as "Final Order Only as to Defendant Sharon B. Williams," its dismissal of the claims against her with prejudice, and its reference to being "a final, appealable decision on the merits as to the cause of action alleged against defendant Sharon B. Williams." Harless counters that the July order did not dispose of all claims and did not include the required findings for a

_____

[5] Because the nonsuit order omitted the date of entry, the circuit court later entered a nunc pro tunc order clarifying that it had entered the nonsuit order on December 11, 2023, after entering the partial final judgment order.

partial final judgment under Rule 1:2. According to Harless, the circuit court did not enter a final appealable order as to Williams until December 11, 2023.

This Court has appellate jurisdiction over "any final judgment, order, or decree of a circuit court in a civil matter." Code § 17.1-405(A)(3). "When claims for relief are presented in a civil action against multiple parties[,] . . . the trial court may enter final judgment as to one or more but fewer than all of the parties *only* by entering an order expressly labeled" as a "Partial Final Judgment" that contains specific, enumerated "express findings." Rule 1:2(a) (emphasis added). Unless the circuit court enters a "Partial Final Judgment," "any order which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties in the action is *not* a final judgment." Rule 1:2(d) (emphasis added); *see also* Rule 1:1(b) ("Unless otherwise provided by rule or statute, a judgment, order, or decree is final if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action *against all parties . . . .*" (emphasis added)).

Although the July order sustained Williams's demurrer and dismissed the claims against her with prejudice, it did not adjudicate the claims against the remaining defendants. And the circuit court did not expressly label the July order a "Partial Final Judgment" or make the "express findings" required by Rule 1:2(a). To the contrary, the July order noted that claims remained against the other defendants; it did not find that Williams's interests were "separate and distinct," that an appeal would not impact "claims against the remaining defendants," or that "decision of the claims remaining in the trial court cannot affect" Williams, should the appeal result in a reversal. Rule 1:2(a). Thus, the July order was not a final order, *see* Rule 1:2(d), nor subject to the expiration of the circuit court's jurisdiction after 21 days, *see* Rule 1:1(a). The case thus remained in the breast of the circuit court, which retained discretion to enter an amended order addressing Williams's demurrer. *See Carter v. Wake Forest Univ. Baptist Med.*

*Ctr.*, 76 Va. App. 756, 763-64 (2023) (noting subsequent entry of a "partial final judgment" order, which rendered an earlier order final as of the date of the partial final judgment), *aff'd*, 303 Va. 135 (2024). The circuit court entered the order with the required findings on December 11, 2023. Harless timely filed the notice of appeal on January 5, 2024, so we deny Williams's motion to dismiss the appeal.

## II. Merits of Williams's Demurrer

"We review de novo a circuit court's decision sustaining a demurrer." *Trent v. Onderlaw, LLC*, 81 Va. App. 179, 190 (2024). "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Givago Growth, LLC v. Itech AG, LLC*, 300 Va. 260, 264 (2021). Furthermore, we "interpret those allegations in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)).

## A. Negligence

"The question of liability for negligence cannot arise at all until it is established that the [individual] who has been negligent owed some duty to the person who seeks to make him liable for his negligence." *Shoemaker v. Funkhouser*, 299 Va. 471, 477-78 (2021) (alteration in original) (quoting *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 241 Va. 270, 277 (1991)). "[W]hether a legal duty in tort exists is a pure question of law" that we review de novo. *Id.* at 478 (alteration in original) (quoting *Burns v. Gagnon*, 283 Va. 657, 668 (2012)).

Harless argues that the circuit court erred by sustaining Williams's demurrer because the amended complaint sufficiently alleged that Williams had a duty to protect drivers from animals escaping through her fence and into the road and that this duty required cutting down "the trees near the fence line."

Under common law, "every person [must] exercise ordinary care in the use and maintenance of his own property to prevent injury to others."[6] *RGR, LLC v. Settle*, 288 Va. 260, 276 (2014) (alteration in original) (quoting *Perlin v. Chappell*, 198 Va. 861, 864 (1957)). Property owners adjoining a highway owe a duty to the public "to refrain from engaging in any act that makes the highway more dangerous than in a state of nature or in the state in which it has been left." *Cline v. Dunlora South, LLC*, 284 Va. 102, 109 (2012). But the landowner has "no duty to those outside the land with respect to natural conditions existing on the land, regardless of their dangerous condition." *Id.* at 106. Applying these doctrines, in *Cline*, the Supreme Court affirmed the sustaining of a demurrer, holding that a private landowner had no duty "to inspect and cut down sickly trees that ha[d] the possibility of falling on a public roadway and inflicting injury." *Id.* at 108-09. The Court explained that the plaintiff's amended complaint made "no allegations . . . to suggest that [the defendant] engaged in any affirmative act that caused the property . . . to be different than in its natural state," but instead stated its allegations "in terms of a *failure* to act." *Id.* at 109-10 (emphasis added). Thus, the Court found no duty requiring a landowner to act "to protect individuals traveling on an adjoining public highway from natural conditions on the landowner's property." *Id.* at 110.

Likewise, here, the amended complaint alleged that Williams was negligent due to her *failure* "to address or maintain th[e] trees" near her fence. The amended complaint does not allege that Williams engaged in any affirmative act that caused any change to the "natural condition" of the trees on her land. Williams had no duty "to inspect and cut down" the ash trees on her private property to prevent injury to drivers on the public roadway, even if the trees were "allegedly dead or decaying." *Id.* at 108-09.

---

[6] With respect to animals, "the owner of a domestic animal must exercise ordinary care to keep the animal off public highways." *Stout v. Bartholomew*, 261 Va. 547, 557 (2001). This duty does not apply here because Williams did not own the horse; the Grillses did.

Harless further contends that, because Williams permitted the Grillses to use her land, Williams had a duty as a landowner to exercise reasonable care in controlling their conduct to prevent an "unreasonable risk of bodily harm to others." According to Harless, Williams owed this duty because Williams, not the Grillses, had exclusive control over the trees on the property.

Landowners owe a duty "to exercise reasonable care to control the conduct of a third party[] who has been granted permission by the landowner to use the land" to prevent the third party's conduct that "intentionally harm[s] others or . . . create[s] an unreasonable risk of bodily harm to others." *Shoemaker*, 299 Va. at 481-82. This duty arises when the landowner is present on the property, "knows or has reason to know that he or she has the ability to control the third person, and . . . knows or should know of the necessity and opportunity" for doing so. *Id.* at 482.

Here, the "control" Harless argues that Williams had a duty to exercise was "control of the trees on [her] property" because "the Grills[es] were not allowed to cut trees or make any other changes to the property." Thus, the core of Harless's claim merely repeats that Williams had a duty to remove the ash trees from her private property. As explained above, Williams had no duty to do so.[7] *See Cline*, 284 Va. at 108-09.

Harless also relies on the Supreme Court's holding in *T. E. Ritter Corp. v. Rose*, 200 Va. 736, 742 (1959), that a person who engages an independent contractor for hazardous work will be liable "if the independent contractor fails to exercise due care with respect to the performance of the work or the use of the dangerous instrumentality." The only work the amended complaint alleges that the Grillses performed was "ke[eping] a fence up . . . and maintain[ing] the property as regards to the mowing and 'bush-hogging.'" The amended complaint lacks any allegation that

---

[7] We need not address Harless's claim that the amended complaint pleaded sufficient notice of the danger imposed by the trees, because Williams owed no duty to ameliorate that danger regardless of notice.

- 9 -

Williams engaged the Grillses to perform these tasks as independent contractors, or that these tasks were inherently hazardous or required use of a dangerous instrument.

The amended complaint failed to plead a negligence claim against Williams because she owed no duty to inspect and remove the ash trees at issue.[8] For this reason, the circuit court did not err in sustaining Williams's demurrer to the negligence claim.

### B. Nuisance

When a complaint pleads "both negligence and nuisance as a basis for liability, but the nuisance allegedly was the result of negligent conduct," we "look to the object of the action, rather than its form, to determine the extent of liability." *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 407 (1988). "Merely attaching the label 'nuisance' to an action . . . does not alter [its] nature . . . ." *Id.* (quoting *Randall v. Village of Excelsior*, 103 N.W.2d 131, 135 (Minn. 1960)). "Where the acts or omissions constituting negligence are the identical acts which it is asserted give rise to a cause of action for nuisance, the rules applicable to negligence will be applied." *Id.* (quoting *Randall*, 103 N.W.2d at 135).

Harless argues that the circuit court erred by sustaining Williams's demurrer because the amended complaint sufficiently alleged a nuisance claim. The amended complaint titled the claim against Williams "[n]egligence and/or [n]uisance," but it alleged identical acts for both theories—that Williams harmed Jackson by allowing the ash trees to remain on her property rather than maintaining or removing them. Because both claims were based on the same alleged conduct, Harless's nuisance claim "stands or falls on whether [Williams's] alleged conduct was negligent." *Cline*, 284 Va. at 106 n.1. As explained above, Harless's amended complaint failed to plead a

---

[8] We note that Harless did not claim Williams was negligent in permitting the Grillses to keep horses on the property without taking necessary steps to ensure adequate fencing. Harless premised the negligence claim on a theory that Williams had a duty to inspect and cut down trees.

negligence claim, so Harless "may not recover damages for the negligent conduct alleged merely by characterizing the results of the conduct as a nuisance." *Philip Morris*, 235 Va. at 407. Accordingly, we find no error in the circuit court's sustaining Williams's demurrer to the nuisance claim.

### III. Strict Liability

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The purpose of Rule 5A:18 "is to ensure that litigants 'make timely and specific objections, so that the trial court has an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Hannah v. Commonwealth*, 303 Va. 106, 124-25 (2024) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022). Moreover, "sub-arguments [that] go considerably beyond the objections made in the trial court" are not preserved for appeal. *Hamad v. Hamad*, 61 Va. App. 593, 600 (2013).

Harless argues that Williams is "strictly liable" under Code § 55.1-2834.[9] In support, Harless asserts that Williams was a manager of the escaped horse because she "properly could have exerted control" to prevent it from escaping through the fence on her property and thus, should be held liable under Code § 55.1-2834 for failing to do so. Harless did not preserve this argument for appellate review.

---

[9] Under Code § 55.1-2834, an "owner or manager" of "any domesticated livestock . . . found going at large . . . or upon the lands of any person other than the owner" is "liable for all damage or injury done by such animals to the owner of the crops or lands upon which they trespass."

- 11 -

"It is the appellant's burden 'to obtain a clear ruling from the [circuit] court' on an issue he wishes to raise on appeal." *Northcraft v. Commonwealth*, 78 Va. App. 563, 610 n.17 (2023) (alteration in original) (quoting *McDaniel v. Commonwealth*, 73 Va. App. 299, 313 (2021)). "If [the] opportunity [to address an issue] is not presented to the trial court, there is no ruling by the trial court on the issue, and thus no basis for review or action by this Court on appeal." *Hawkins v. Town of South Hill*, 301 Va. 416, 434 (2022) (alterations in original) (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)).

Harless did not assert a strict liability claim under Code § 55.1-2834 in the amended complaint or raise this argument during the hearing on Williams's demurrer. The only mention of Code § 55.1-2834 in the record is in Harless's motion to certify the July order for an interlocutory appeal. Merely citing Code § 55.1-2834 in that motion was insufficient to preserve the issue for appeal. The motion seeking interlocutory certification did not ask the circuit court to decide the merits of that claim; instead, it asked only that the circuit court certify the issue for appellate review. Additionally, the record does not reflect that the parties ever argued the motion or that the circuit court ever ruled on the strict liability claim; instead, the circuit court and counsel focused exclusively on the finality of the July order and the propriety of partial final judgment. Because Harless did not obtain a ruling on whether Williams was liable under Code § 55.1-2834, we will not address that claim for the first time on appeal. *See Lawlor v. Commonwealth*, 285 Va. 187, 255 (2013) (declining to consider argument on appeal that appellant raised in a written motion when appellant "never argued the written motion, sought or obtained a ruling, or otherwise provided the court with an opportunity to rule on it"). Although there are exceptions to Rule 5A:18, Harless does not invoke them, and we will not do so sua sponte. *See Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

## CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*